# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWANDA NEVERS ALEX, ET AL., <br>     Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 16-17019 |
| ST. JOHN THE BAPTIST <br> PARISH SHERIFF'S OFFICE, ET AL., <br>     Defendants | SECTION: "E" |

## ORDER AND REASONS

Before the Court is St. John the Baptist Parish Sheriff Mike Tregre, Detective Vernon Bailey, Detective Maurice Rodrigue, and Deputy James Bessinger's (collectively the "St. John Defendants") motion for judgment on the pleadings pursuant to Rule 12(c).[1] The motion is opposed.[2] For the reasons that follow, the Court grants the motion.

## BACKGROUND[3]

Plaintiff Shawanda Nevers Alex ("Nevers"), ran a catering business, 3LJ's Café, LLC, in Laplace, Louisiana.[4] In addition to running 3LJ's Café, LLC, Nevers "helped individuals file their own tax returns."[5] Nevers, along with her husband Daryl Alex, and their daughter Laquana Lewis (collectively "Plaintiffs") allege various state and federal law enforcement officials conspired against them to commit "malic[ious] acts to destroy plaintiffs['] business[es]"[6] during the course of criminal investigations into Nevers' tax filing business. As a result of these investigations, Nevers ultimately pleaded guilty to eight counts of issuing worthless checks in St. John the Baptist Parish, for which she was

---
[1] R. Doc. 152.
[2] R. Doc. 156.
[3] Unless otherwise indicated, citations to the record herein are to Plaintiffs' original and amended complaints. R Docs. 7-1; 29.
[4] R. Doc. 7-1 at 2, 4–5.
[5] R. Doc. 7-1 at 4.
[6] R. Doc. 7-1 at 7.

1

sentenced to ten years, and to four counts of tax fraud in the Eastern District of Louisiana, for which she has yet to be sentenced.[7]

According to Plaintiffs, various state and federal law enforcement officials conspired to "destroy" Plaintiffs' businesses following Nevers' "confrontation with one of [the] St. John [the Baptist's] District Attorney['s office] employee[s]," Meg Spatz.[8] According to Plaintiffs, Spatz, who is not a party to this case, "made a statement" with which Nevers disagreed.[9] Plaintiffs allege this confrontation "was the beginning of the malice and malicious acts" against Plaintiffs and their businesses.

Approximately two years after the incident with Spatz, on September 10, 2013, Nevers "met with two agents of the [FBI] Civil Rights Division" to file a complaint against the St. John the Baptist's District Attorneys' Office, alleging several acts of harassment. "[A]s a result of filing [the complaint,] plaintiff Nevers[] was placed on the [D]epartment of Justice website and in the media stating that the Justice Department sues to stop Louisiana Tax Return Preparer."[10] In December 2013, "[t]he harassment became extreme because . . . Detective Maurice Rodrigue came in the plaintiffs restaurant and stood inside until all patrons were uncomfortable and left restaurant."[11] Because of Detective Rodrigue's actions, "plaintiff Nevers filed a formal complaint with Internal Affairs and

---

[7] Plaintiff Daryl Alex also pleaded guilty in the Eastern District of Louisiana to one count of conspiracy to commit wire fraud.
[8] R. Doc. 7-1 at 2.
[9] R. Doc. 7-1 at 2.
[10] R. Doc. 7-1 at 10. Plaintiffs apparently refer to a November 12, 2013 article posted on the Department of Justice website entitled "Justice Department Sues to Stop Louisiana Tax Return Preparer," which explains that "The United States has asked a federal court in New Orleans to permanently bar Shawanda Nevers . . . of La Place, La., from preparing federal income tax returns for others" because "Nevers prepared returns that claimed losses by fabricating expenses for fictitious businesses or overstating expenses incurred by legitimate enterprises." *See Justice Department Sues to Stop Louisiana Tax Return Preparer*, U.S. DEP'T OF JUSTICE (Nov. 13, 2013), https://www.justice.gov/opa/pr/justice-department-sues-stop-louisiana-tax-return-preparer.
[11] R. Doc. 7-1 at 10.

Sheriff Mike Tregre. After there was no response[,] plaintifff [sic] Shawanda Nevers Alex and husband Daryl Alex went to see Sheriff Tregre about the complaint, [and] Sheriff Tregre stated" the incident was not his doing.[12]

On March 20, 2014, Detective Bailey conducted a warrantless search of Plaintiffs' restaurant,[13] and again Nevers "filed a formal complaint with Sheriff Mike Trege [sic], Internal Affairs, the United States Department of Justice[,] and FBI Civil Rights Division."[14] Plaintiffs allege the catering business lost numerous contracts as word of their legal troubles began to spread.[15] According to them, these "false accusations" placed them "in fear for their lives and the lives of their family members."[16] Because of this fear, on June 6, 2014, "Nevers placed a video on you tube seeking help with the corruption and illegal activities."[17] "After placing the video and filing the complaint the coercion, harrassment [sic], prosecutorial[] misconduct, malice, and intimidation tatics [sic] eminenced [sic]."[18]

Plaintiffs allege that on June 18, 2014, in retaliation for posting the video,[19] "the DA's office conspired with the U.S. Attorney['s] office and Federal Agent Kristie L. Gregoire to apply for a search warrant of plaintiffs['] restaurant."[20] The next day, on June 19, 2014, "Federal Agents conspired with the St. John the Baptist Parish Sheriff Office, Secret Service, United States Marshal[s], and Louisiana State Police" when they executed a search warrant at Plaintiffs' restaurant "with the guns drawn."[21]

---

[12] R. Doc. 7-1 at 11.
[13] R. Doc. 7-1 at 11.
[14] R. Doc. 7-1 at 11.
[15] R. Doc. 7-1 at 4–6.
[16] R. Doc. 7-1 at 17.
[17] R. Doc. 7-1 at 17.
[18] R. Doc. 7-1 at 18.
[19] R. Doc. 7-1 at 33.
[20] R. Doc. 7-1 at 12.
[21] R. Doc. 7-1 at 13.

"After the DA and other law enforcement [agencies] destroyed plaintiff[']s business[,] it was hard for the plaintiffs to pay their bills because they suffered great hardship."[22] Consequently, on January 1, 2015, Plaintiffs filed for bankruptcy.[23] On January 7, 2015, despite Plaintiffs' bankruptcy proceedings, the St. John Parish Sheriff's office proceeded with a foreclosure sale of Plaintiffs' property.[24]

On December 29, 2016, Plaintiffs, proceeding *pro se*, filed their original complaint, asserting claims for monetary damages in the amount of $10,000,000 against a number state and federal officials and agencies.[25] The Plaintiffs filed an amended complaint on January 31, 2017, which clarified their claims against the St. John Defendants are brought in their official capacities[26] under 42 U.S.C. § 1983 for "violat[ing] [Plaintiffs'] constitutional rights."[27] The St. John Defendants now move to dismiss all of Plaintiffs' allegations against them under Rule 12(c), arguing the claims have prescribed.[28]

## STANDARD OF LAW

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[29] "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[30] "[T]he central issue is whether, in the light most

---

[22] R. Doc. 7-1 at 23.
[23] R. Doc. 7-1 at 21.
[24] R. Doc. 7-1 at 21.
[25] R. Doc. 7-1.
[26] R. Doc. 29.
[27] R. Doc. 7-1 at 2.
[28] R. Doc. 152-1.
[29] FED. R. CIV. PRO. 12(c).
[30] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam).

favorable to the plaintiff, the complaint states a valid claim for relief."[31] "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[32] "In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[33] The Court will not, however, "accept as true conclusory allegations or unwarranted deductions of fact."[34]

### LAW AND ANALYSIS

In their amended complaint, the Plaintiffs clarify that the claims against the St. John Defendants are brought against them only in their official capacities.[35] Official capacity claims against the St. John Defendants are governed by the municipal liability principles derived from *Monell v. New York City Department of Social Services* and its progeny.[36] A suit against a public official in his official capacity "is *not* a suit against the official personally."[37] Rather, because an award of monetary damages against an official in his official capacity can only be executed against the government entity,[38] the suit is "to be treated as a suit against the entity."[39]

Under *Monell*, a local government agency, such as a parish sheriff's office, may be liable under section 1983 if the entity causes a person to be subjected to a deprivation of

---

[31] *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).
[32] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (per curiam) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).
[33] *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).
[34] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).
[35] R. Doc. 29 at 2.
[36] 436 U.S. 358 (1978).
[37] *Id.*
[38] *Id.*
[39] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original).

his rights.[40] Such claims are governed by the prescriptive period for personal injury actions of the state in which the conduct occurred.[41] In Louisiana, "[i]t is well established . . . that wrongs committed by Louisiana state officials in violation of federal law,"[42] are governed by the one-year prescriptive period for delictual actions found in Louisiana Civil Code article 3492.[43] Under article 3492, a plaintiff's claim is untimely if it is filed more than one year after "the day injury or damage is sustained."[44] Once it is established that the prescriptive period has run, a plaintiff must prove that an exception to prescription applies.[45]

In this case, Plaintiffs allege they sustained damages as a result of actions the St. Johns Defendants took between December 2013, when Plaintiffs allege Detective Rodrigue stood inside Plaintiffs' restaurant "until all patrons were uncomfortable and left restaurant,"[46] and January 7, 2015, when the St. John Parish Sheriff's Office sold Plaintiff's property, notwithstanding Plaintiffs' being in bankruptcy proceedings.[47] Plaintiffs did not bring their claims against the St. John Defendants until December 9, 2016, more than a year and ten months after the last event took place.[48]

---

[40] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).
[41] *Wilson v. Garcia*, 471 U.S. 261 (1985); *accord Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982).
[42] *Jones*, 688 F.2d at 344.
[43] Civil Code article 3292 states "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. C. C. art. 3292. "[T]he 'date of discovery' from which prescription/peremption begins to run is the 'date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.'" *Lomont v. Bennett*, 172 So. 3d 620, 638 (La. 2015).
[44] *Id.* at 637.
[45] *Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) (citation omitted); *Terrebone Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (citations omitted).
[46] R. Doc. 7-1 at 10.
[47] R. Doc. 7-1 at 21.
[48] R. Doc. 1.

In their opposition to the St. John Defendants' motion to dismiss, Plaintiffs argue the prescriptive period has been tolled because their claims are subject to the continuing tort doctrine and the doctrine of *contra non valentem*.[49]

The "continuing tort" doctrine has its roots in property damage cases.[50] Louisiana jurisprudence draws a distinction between continuous and discontinuous causes of injury and resulting damage:

> When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage.[51]

"A continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act."[52] "The continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury."[53] To determine whether a tort is continuous, a court "must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and termin[us], even though the damage persists and may progressively worsen."[54] When a tort is continuous, "prescription runs from the date of the last harmful act."[55]

In this case, Plaintiffs allege they sustained multiple injuries as a result of each of the St. John Defendants' overt acts: (1) when Detective Maurice Rodrigue came in

---

[49] R. Doc. 156.
[50] *See Crump v. Sabine River Auth.*, 98-2326, (La.6/29/1999); 737 So. 2d 720, 726.
[51] *Hogg v. Chevron U.S.A. Inc.*, 2009-2632, (La. 7/6/10); 45 So. 3d 99, 1003.
[52] *Id.*
[53] *Id.*
[54] *Id.* at 1003–04.
[55] *S. Cent. Bell Tele. Co. v. Texaco, Inc.*, 418 So.2d 531, 532 (La. 1982).

Plaintiffs restaurant and stood inside,[56] (2) when Detective Bailey conducted a warrantless search of Plaintiffs' restaurant,[57] (3) when St. John Parish Sheriff's office sold Plaintiffs' property,[58] and (4) when "Federal Agents conspired with the St. John the Baptist Parish Sheriff Office, Secret Service, United States Marshal[s], and Louisiana State Police" to execute a search warrant at Plaintiffs' restaurant "with the guns drawn."[59] Theses alleged harms were not "ongoing" or "continuous."[60] Rather, the alleged harms in this case are discontinuous and terminus.[61] Further, even assuming Plaintiffs have alleged a continuing tort, the last alleged overt act took place well over one year before Plaintiffs filed suit. Therefore, Plaintiffs have not alleged a continuing tort, and even if they did, these claims have prescribed.

The doctrine of *contra non valentem* suspends the running of prescription when the "plaintiff was effectually prevented from enforcing his rights for reasons external to his own will."[62]

> Louisiana jurisprudence has long recognized the doctrine of contra non valentem as a means of suspending the running of prescription . . . . [There are] four instances where contra non valentem can be applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[63]

---

[56] R. Doc. 7-1 at 10.
[57] R. Doc. 7-1 at 11.
[58] R. Doc. 7-1 at 21.
[59] R. Doc. 7-1 at 13.
[60] *Id.* at 1004.
[61] *Id.* at 1004.
[62] *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).
[63] *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012).

Prescription recommences when the period of suspension expires.[64] Under the fourth category, "[a]ny cause of action against [a] defendants accrue[s] as soon as [the] plaintiff knew or should have known of the overt acts involved in the alleged conspiracy."[65]

Plaintiffs apparently contend the cause of action was not known or reasonably knowable by to them before the prescriptive period ran, arguing they were not aware of the harms they suffered because Nevers was not "formally charged with the crimes" until "August 2014 and [was not] Sentenced [sic] [until] September 2016." Under the fourth option, prescription begins to run when a reasonable man in the plaintiff's position "has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.'"[66] Louisiana law defines constructive knowledge as "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."[67] "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription."[68] Given the nature of the harms alleged and the fact that Plaintiffs state in their complaint that at least one of them was present for each of the St. John Defendants' overt acts, the Court finds Plaintiffs knew or should have known of the harms on the date on which they took place.

Even accepting Plaintiffs' allegations as true, each of Plaintiffs' claims against the St. John Defendants have prescribed and no exception to prescription applies to this case.

---

[64] La. Civ. Code art. 3472.
[65] *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987).
[66] *Lomont*, 172 So. 3d at 638.
[67] *Campo v. Correa*, 01–2707, p. 12 (La. 6/21/02), 828 So. 2d 502, 510–511.
[68] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So.3d 991, 997.

9

Plaintiffs did not bring their claims against the St. John Defendants until December 9, 2016, more than ten months after the prescriptive period ran on Plaintiffs' claims.[69]

Accordingly;

**IT IS ORDERED** that the St. John Defendants' motion to dismiss[70] is **GRANTED**. The Plaintiffs' claims against St. John the Baptist Parish Sheriff Mike Tregre, Detective Vernon Bailey, Detective Maurice Rodrigue, and Deputy James Bessinger in their official capacities are **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 7th day of November, 2017.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[69] R. Doc. 1.
[70] R. Doc. 152.