UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWANDA NEVERS ALEX, ET AL., <br>    Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 16-17019 |
| ST. JOHN THE BAPTIST <br>PARISH SHERIFF'S OFFICE, ET AL., <br>    Defendants | SECTION: "E" |

## ORDER AND REASONS

Before the Court is a motion to dismiss filed by St. Tammany Parish Sheriff Randy Smith, Deputy Yvette Sandavol, Deputy Sean Lamb, Deputy Maurice McCall, Deputy Justin Doles, and Deputy Don Powers (collectively the "St. Tammany Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The motion is opposed.[2] For the reasons that follow, the Court grants the motion.

## BACKGROUND

Plaintiff Shawanda Nevers Alex ("Nevers"), ran a catering business, 3LJ's Café, LLC, in Laplace, Louisiana.[3] In addition to running 3LJ's Café, LLC, Nevers "helped individuals file their own tax returns."[4] Nevers, along with her husband Daryl Alex, and their daughter Laquana Lewis (collectively "Plaintiffs"), allege various state and federal law enforcement officials conspired against them to commit "malic[ious] acts to destroy plaintiffs['] business[es]"[5] during the course of criminal investigations into Nevers' tax filing business. As a result of these investigations, Nevers ultimately pleaded guilty to eight counts of issuing worthless checks in St. John the Baptist Parish, for which she was

---

[1] R. Doc. 150.
[2] R. Doc. 151.
[3] R. Doc. 7-1 at 2, 4–5.
[4] R. Doc. 7-1 at 4.
[5] R. Doc. 7-1 at 7.

1

sentenced to ten years, and to four counts of tax fraud in the Eastern District of Louisiana, for which she has yet to be sentenced.[6]

On May 5, 2016, Nevers was arraigned for her federal crimes and was thereafter "housed at the St. Tammany Parish jailhouse."[7] By "July, Plaintiff Nevers had filed many complaints with [the] St. Tammany Sheriff office because the male deputies watch you shower and take care of your personal needs."[8] On July 12, 2016, "Plaintiff Nevers had an altercation with a state inmate that was on psychotropic drugs. Plaintiff Nevers did everything to refrain from the encounter,"[9] but nevertheless sustained "severe nerve damage" to two of her fingers.[10] Following the incident, Nevers asked to press charges against the inmate, but "was refused."[11]

On December 29, 2016, Plaintiffs, proceeding *pro se*, filed their original complaint,[12] asserting claims for monetary damages in the amount of $10,000,000 against a number state and federal officials and agencies.[13] Plaintiffs filed a second amended complaint on April 19, 2017, which clarified their claims against the St. Tammany Defendants are brought only in their official capacities,[14] under 42 U.S.C. § 1983, for "violat[ing] their constitutional rights, as a result to [sic] retaliatory [sic]

---

[6] Plaintiff Daryl Alex also pleaded guilty in the Eastern District of Louisiana to one count of conspiracy to commit wire fraud.
[7] R. Doc. 7-1 at 27. According to Nevers, these charges included violations of:
  1. 26 U.S.C. [§] 7206(2) aiding and assisting in preparation of a false tax return counts 1-37
  2. 18 U.S.C. [§] 401(3) counts 38-45 (criminal contempt) saying plaintiff continued filing tax return[s] after being enjoined by [a] federal judge
  3. 18 U.S.C. [§] 1344(3) count 46 bank fraud plaintiff Nevers filed a BP Claim and because plaintiff Nevers did not have a business at the time. [Nevers] file[d] a false claim
  4. 18 U.S.C. [§] 505 Plaintiff forged a judge [sic] signature
R. Doc 7-1 at 27.
[8] R. Doc. 7-1 at 29–30.
[9] R. Doc. 7-1 at 30.
[10] R. Doc. 7-1 at 30.
[11] R. Doc. 7-1 at 30.
[12] R. Doc. 7-1.
[13] R. Doc. 7-1.
[14] R. Doc. 75.

measures."[15] The St. Tammany Defendants now move to dismiss all of Plaintiffs' allegations against them under Rule 12(b)(6), arguing Plaintiffs have failed to state a claim upon which relief can be granted.[16]

## STANDARD OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] However, the court does not accept as true legal conclusions or mere conclusory statements,[20] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[21] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[22]

"Factual allegations must be enough to raise a right to relief above the speculative level."[23] "[W]here the well-pleaded facts do not permit the court to infer more than the

---

[15] R. Doc. 7-1.
[16] R. Doc. 150-2.
[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[19] *Id.*
[20] *Id.*
[21] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[22] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[23] *Twombly*, 550 U.S. at 555.

3

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[24]

## LAW AND ANALYSIS

*A. The St. Tammany Defendants*

In their amended complaint, Nevers clarifies that her claims against the St. Tammany Defendants are brought against them only in their official capacities.[25] It is well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability.[26] Louisiana grants no capacity to be sued to any parish sheriff's office.[27] The sheriff, in his official capacity, is the appropriate governmental entity responsible for any constitutional violations committed by his office.[28] When, as in this case, the sheriff is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and it is appropriate to dismiss them.[29] Accordingly, Plaintiff's § 1983 claims against Deputy Sandavol, Deputy Lamb, Deputy McCall, Deputy Doles, and Deputy Powers are dismissed.

Whether Plaintiff's claims against Sheriff Smith in his official capacity survive the motion to dismiss stage depends on whether Plaintiff has made out a plausible claim for relief based on municipal liability. A municipality may be liable under § 1983 if it "subjects a person to a deprivation of rights or causes a person to be subjected to such

---

[24] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[25] R. Doc. 75. The Court also assumes only Nevers brings these claims, as Alex and Lewis lack standing. "To establish standing, a plaintiff must show that: (1) he has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014).
[25] *Connick*, 563 U.S. at 60 (internal quotation marks omitted).
[26] *Monell v. New York City Dept. of Social Servs*, 436 U.S. 658 (1978).
[27] *Cozzo v. Tangipahoa Par. Council-President Govt.*, 279 F.3d 273, 283 (5th Cir. 2002).
[28] *Jenkins v. Jefferson Par. Sheriff's Office*, 402 So. 2d 669, 671 (La. 1981).
[29] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). *Monell* and later decisions reject municipal liability predicated on respondeat superior, because the text of § 1983 will not bear such a reading. *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997).

4

deprivation."[30] To prevail on a § 1983 claim against a local government or municipality, a plaintiff must establish: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.[31]

An "official policy" for purposes of § 1983 includes: (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority"; (2) a persistent and widespread practice of city officials or employees, "which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy";[32] and (3) "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983."[33]

The culpability element, which may overlap with proof of a policy, requires evidence that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice."[34] "'Deliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[35]

---

[30] *Connick*, 563 U.S. at 60 (internal quotation marks omitted).
[31] *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010). Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989).
[32] *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000). "Actual or constructive knowledge of such [a] custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).
[33] *Bryan Cty.*, 520 U.S. at 406 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)).
[34] *Id.* at 407 (citation omitted).
[35] *Id.* at 410.

Plaintiff's municipal liability or *Monell* claim in this case is based on the St. Tammany Parish Sheriff's Office's alleged customs or policies of (1) allowing "male deputies [to] watch [female inmates] shower and take care of [their] personal needs" and (2) refusing to allow inmates to press charges against other inmates of their own volition.[36] Even assuming these two allegations amount to an official policy or custom of which Sheriff Smith had actual or constructive knowledge, Plaintiff has failed to connect these alleged municipal policies to a constitutional violation.[37]

Although prisoners "have a minimal right to bodily privacy,"[38] even if a prison regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[39]

> To determine the reasonableness of a prison restriction, [the court must] consider the four factors outlined by the [U.S.] Supreme Court in *Turner* [*v. Safley*,[40]]: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of justifying that right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "whether the absence of ready alternatives is evidence of the reasonableness of a prison regulation."[41]

Under this framework, the Fifth Circuit has held that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security."[42] The Fifth Circuit reasoned, "comprehensive surveillance by all guards increases the overall security of the prison,

---

[36] R. Doc. 7-1 at 29–30.
[37] *See Valle*, 613 F.3d at 541–42.
[38] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).
[39] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[40] 482 U.S. 78, 89 (1987).
[41] *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014).
[42] *Oliver v. Scott*, 276 F.3d 736, 745–46 (5th Cir. 2002).

minimizing inmate-on-inmate violence and sexual assaults."[43] "[R]equiring only [fe]male guards to supervise [female] inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff"—"there is no readily identifiable alternative that would impose only de minimis expenses in terms of inmate security, staffing costs, or equal employment opportunities."[44] Thus, the St. Tammany Parish Sheriff's Office's alleged policy of allowing "male deputies [to] watch [female inmates] shower and take care of [their] personal needs" does not violate the Constitution. Because Plaintiff cannot establish "[she was] deprived of a right secured by the Constitution,"[45] this claim must be dismissed.

Plaintiff also alleges she was deprived of a constitutionally protected right as a result of the St. Tammany Parish Sheriff's Office's policy or practice of refusing to allow inmates to choose when and how to press charges against other inmates.[46] This cause of action is also untenable. Under Louisiana law, "[s]ubject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."[47] Thus, the St. Tammany Parish District Attorney's

---

[43] *Garrett*, 560 F. App'x at 380 (citing *Oliver*, 276 F.3d at 746). These cases dealt with female security personnel monitoring male inmates; however, the rationale applies equally to this case. *See Scott*, 276 F.3d at 745–46; *Timm v. Gunter*, 917 F.2d 1093, 1101–02 (8th Cir. 1990) (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security).
[44] *Id.* at 380–81. *See also Mitchell v. Quarterman*, 515 F. App'x 244, 247 (5th Cir. 2012); *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) ("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); *Timm*, 917 F.2d at 1101–02; *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (holding that female correctional officers' presence around naked prisoners did not violate their privacy rights).
[45] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1990).
[46] R. Doc. 7-1 at 29–30.
[47] La. Code Crim. P. art. 61. Courts have long found this delegation of discretion constitutional. *See, e.g.*, *State v. McGhee*, 554 So. 2d 145, 147 (La. Ct. App. 2 Cir. 1989).

Office, not the St. Tammany Parish Sheriff's Office, determines whether criminal charges should be pressed in a given situation. Therefore, Plaintiff's § 1983 claim against Sheriff Smith cannot be substantiated on this basis.

### B. Plaintiffs' Remaining Claims

On April 19, 2017, the Court granted St. John the Baptist Parish District Attorney Bridget Dinvaut, Assistant District Attorneys Justin Lacour and J. Phillip Prescott, Jr., and Jennifer Duhe's (collectively the "DA Defendants") motion for summary judgment,[48] but deferred ruling on Plaintiffs' state law claims against the DA Defendants.[49] In addition to the DA Defendants, Plaintiffs also bring a state law claim against Glenda Meyers, a court reporter, who Plaintiffs allege was paid "the sum of $1500.00 for [a] court transcript to file for a new trial [for Nevers]. Glenda Meyers cashed the money order on 03/04/2016, and plaintiff[s] have not received the transcript as of this date."[50]

District courts have discretion not to exercise supplemental jurisdiction over a claim when all claims over which the court had original jurisdiction have been dismissed.[51] In this case, the Court has dismissed all of Plaintiffs' federal claims.[52] Although the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute."[53] Rather,

---

[48] R. Doc. 44.
[49] R. Doc. 76 at 2 n.8.
[50] R. Doc. 7-1 at 25.
[51] 42 U.S.C. § 1367(c)(3).
42 U.S.C. § 1367(c) reads:
    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
        (1) the claim raises a novel or complex issue of State law,
        (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
        (3) the district court has dismissed all claims over which it has original jurisdiction, or
        (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
[52] R. Docs. 39, 69, 76, 78, 97, 136, 159.
[53] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).

a court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[54] Having considered the applicable law, the complexity of Plaintiffs' remaining state law claims, and the fact that this case is not yet set for trial, the Court declines to exercise supplemental jurisdiction over these claims and dismisses Plaintiffs' remaining state law claims without prejudice.[55]

Accordingly;

**IT IS ORDERED** that the St. Tammany Defendants' motion to dismiss[56] is **GRANTED**. The Plaintiffs' claims against St. Tammany Parish Sheriff Randy Smith, Deputy Yvette Sandavol, Deputy Sean Lamb, Deputy Maurice McCall, Deputy Justin Doles, and Deputy Don Powers in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all of Plaintiffs' state law claims against all Defendants are hereby **DISMISSED WITHOUT PREJUDICE**.[57]

**New Orleans, Louisiana, this 16th day of November, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[54] *Id.* (citations omitted).
[55] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Batiste*, 179 F.3d at 227 (reversing the district court for declining to retain supplemental jurisdiction over the state law claims that remained following the district court's grant of summary judgment on all of the plaintiff's federal claims because "the remaining [state law] claims d[id] not involve any 'novel or complex' issues of state law," and "[t]he case had been pending in the district court for almost three years"). The Court dismisses without prejudice all of Defendants' remaining state law claims against each Defendant in this case.
[56] R. Doc. 150.
[57] On April 19, 2017, the Court granted St. John the Baptist Parish District Attorney Bridget Dinvaut, Assistant District Attorneys Justin Lacour and J. Phillip Prescott, Jr., and Jennifer Duhe's (collectively the "DA Defendants") motion for summary judgment, R. Doc. 44, but deferred ruling on Plaintiffs' state law claims against the DA Defendants, R. Doc. 76 at 2 n.8.